**In re Wolf Arbin WEINHOLD, Debtor.**

**No. 8:94–bk–6261–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 5, 2008.

Russell M. Blain, Esquire, Stichter, Riedel, Blain & Prosser, Tampa, FL, for the Debtor.

Robert A. Colton, Esquire, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for the Chapter 7 Trustee.

Robert L. Rocke, Esquire, and Jonathan B. Sbar, Esquire, Rocke, McLean & Sbar, P.A., Hywel Leonard, Esquire, Carlton Fields, P.A., Tampa, FL, for Carolina Preservation Partners, Inc., and Douglas A. Smith.

## ORDER ON REQUEST FOR SUPERSEDEAS BOND AS A CONDITION TO STAY PENDING APPEAL

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing on the Motion for Stay Pending Appeal filed by Carolina Preservation Partners, Inc. (CPP) and Douglas A. Smith (Smith).

In the Motion, CPP and Smith requested a stay pending their appeal of an Order approving the Chapter 7 Trustee's compromise with the Debtor, Wolf Arbin Weinhold.

At the hearing on the Motion, the Trustee asserted that she did not oppose the entry of a stay pending appeal, on the condition that CPP and Smith post a supersedeas bond pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure.

At the conclusion of the hearing, the Court determined that the Motion for Stay Pending Appeal should be granted, but that the parties should be permitted to file legal memoranda regarding the Trustee's request for a bond.

The parties have filed their Memoranda, and the Court therefore enters this Order.

### Background

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on June 27,

1994. On his schedule of assets filed in the bankruptcy case, the Debtor listed an "80% limited partnership interest in Wolfs Lair Ltd., a Florida limited partnership."

The primary asset of Wolfs' Lair, Ltd. consists of approximately 1,400 acres of real property located in North Carolina.

On June 4, 1996, the Trustee conducted an auction of the 80 percent Limited Partnership interest owned by the Debtor at the time that the petition was filed. CPP was the successful bidder at the sale, and purchased the interest for the amount of $205,000.00. CPP is owned and controlled by Smith.

On November 28, 2001, the Chapter 7 Trustee, Susan K. Woodard, filed a Complaint against the Debtor, CPP, and Smith. Generally, the Trustee alleged that the Debtor, Smith, and CPP conspired to prevent the bankruptcy estate from realizing the full value of the estate's interest in Wolfs' Lair, Ltd.

On February 2, 2007, the Trustee filed an Emergency Motion to Approve Compromise. (Doc. 215). The parties to the Settlement Agreement are the Trustee and the Debtor. Smith and CPP are not parties to the Agreement.

The Settlement Agreement recites that the real property in North Carolina (the Property) was the subject of the Trustee's Complaint, and that Wolfs' Lair, Ltd. owned the Property at the time that the Debtor filed his Chapter 7 petition. The Settlement Agreement further recites that the Debtor and the Trustee both assert entitlement to the General Partnership interest in Wolfs' Lair, Ltd.

The terms of the Settlement Agreement include the following:

1. The Trustee will transfer all of her interest in the Property to Wolfs' Lair, Ltd., and Wolfs' Lair, Ltd. will deliver a Promissory Note to the Trustee in the amount of $2,500,000.00. The Promissory Note will be secured by a mortgage on the Property, and will be due five years after approval of the Settlement Agreement.

2. The Debtor will transfer all of his interest in the timber rights associated with the Property to Wolfs' Lair, Ltd., and Wolfs' Lair, Ltd. will deliver a Promissory Note to the Debtor.

3. A Chapter 11 petition will be filed for Wolfs' Lair, Ltd. Upon confirmation of a Plan of Reorganization in the Chapter 11 case, the Debtor will become the sole member of the General Partner of Wolfs' Lair, Ltd.

4. The Trustee will dismiss her Complaint with prejudice as to the Debtor, and without prejudice as to CPP and Smith.

Smith and CPP objected to the proposed Settlement Agreement in their claimed capacity as Limited Partners of Wolfs' Lair, Ltd. (Doc. 219).

On July 25, 2007, the Court entered an Order granting the Trustee's Motion to Approve Compromise with Debtor, and approved the Settlement Agreement. (Doc. 242).

On October 5, 2007, the Court entered an Order Denying CPP and Smith's Motion for Rehearing of the Order approving the Settlement Agreement. (Doc. 259).

On October 12, 2007, CPP and Smith filed a Joint Notice of Appeal of the Orders. (Doc. 261). The issues on appeal include whether the Court should have approved a Compromise that appropriated substantially all of the value of CPP's interest in Wolfs' Lair, Ltd., and that diverted the assets of Wolfs Lair, Ltd. for non-partnership purposes. (Doc. 266).

CPP and Smith subsequently filed a Motion for Stay Pending Appeal. (Doc. 275).

On December 26, 2007, the Court entered an Order granting the stay pending appeal, and allowed the parties ten days "to brief the issue of a bond as a condition for the stay pending appeal." (Doc. 285).

## Discussion

CPP and Smith filed their Motion for Stay Pending Appeal pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure. (Doc. 275). The Court has determined that the stay pending appeal should be granted, and the only remaining issue is whether CPP and Smith should be required to post a bond as a condition of the stay.

### A. A bond is required

■ Rule 8005 provides in part:

**Rule 8005.  Stay Pending Appeal**

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.  Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, *the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.*

F.R.Bankr.P. 8005(Emphasis supplied).

The purpose of a supersedeas bond under Rule 8005 is to protect the prevailing party against any loss that might result from a stay of the judgment or order. *In re WestPoint Stevens, Inc.,* 2007 WL 1346616, at *7 (S.D.N.Y.2007).

■ In determining whether a bond should be required, Courts focus on whether the bond is necessary to protect against any reduction in value of the subject property pending appeal, and to "secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal." *In re Adelphia Communications Corporation,* 361 B.R. 337, 350 (S.D.N.Y.2007)(quoting *In re Sphere Holding Corp.,* 162 B.R. 639, 644 (E.D.N.Y. 1994)).

■ It is generally acknowledged that Rule 8005 provides Bankruptcy Courts with the discretion to grant a stay pending appeal without requiring the appellant to post a bond. *In re Adelphia Communications,* 361 B.R. at 350.  The decision regarding whether or not to require a bond under Rule 8005 is discretionary with the Bankruptcy Court. *In re Texas Equipment Company, Inc.,* 283 B.R. 222, 229 n. 5 (Bankr.N.D.Tx.2002).

■ In exercising its discretion, however, the Court must determine whether the party seeking the stay pending appeal has satisfied its burden of showing that no bond is required.

Because a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of supersedeas bond in the full amount of the judgment.  (Citation omitted.)  The bond requirement should not be eliminated or reduced unless doing so "does not unduly endanger the judgment creditor's interest in ultimate recovery."  (Citation omitted.)

*de la Fuente v. DCI Telecommunications Inc.,* 269 F.Supp.2d 237, 240 (S.D.N.Y.2003)(quoted in *In re WestPoint Stevens,* 2007 WL 1346616, at *7, and *In re Adelphia Communications,* 361 B.R. at 350).

Where the party seeking the stay fails to satisfy its burden, the Court should exercise its discretion to require a bond.

If a stay pending appeal is likely to cause harm by diminishing the value of an estate or "endanger [the non-moving parties'] interest in the ultimate recovery," and there is no good reason not to require the posting of a bond, then the court should set a bond at or near the full amount of the potential harm to the non-moving parties.

*In re Adelphia Communications*, 361 B.R. at 351. See *In re Maryland K.C., Incorporated*, 2006 WL 4481986, at *2 (Bankr. D.Md.2006)(The Court found "no reason to deviate from the usual requirement" of a supersedeas bond pending appeal.).

In this case, CPP and Smith contend that a bond is not necessary to protect the Trustee and the Debtor from any loss, because the Order approving the settlement does not require CPP and Smith to pay any money to the Trustee and the Debtor. Consequently, according to CPP and Smith, the "sole impact on the Debtor and the Trustee is that the implementation of the Compromise between the Trustee and the Debtor will be delayed." (Doc. 282, p. 2).

Clearly, the Order that is the subject of the Appeal is not a traditional money judgment against CPP and Smith. It is an Order approving a Settlement Agreement that contemplates future transactions and proceedings involving Wolfs' Lair, Ltd., and the Property that was owned by Wolfs' Lair, Ltd. on the date that the bankruptcy petition was filed.

From the Trustee's standpoint, the objective of the Settlement Agreement is the payment of $2,500,000.00 to the estate from the liquidation or management of the Property.

According to the Trustee, therefore, the specific losses that may be sustained as a result of the delay caused by the Appeal include (1) damage to the Property that constitutes the estate's collateral, or the exposure to a liability associated with an accident or injury on the Property; (2) the inability to maintain the Property during the Appeal; (3) the inability or unwillingness of the settlement's key participants to continue with the proceedings; (4) lost sales opportunities; and (5) the continued accrual of expenses such as real estate taxes on the Property.

The Court has considered the Memoranda filed by the parties, and determines that CPP and Smith have not satisfied their burden of providing specific reasons why the Court should depart from the standard practice of requiring a bond.

CPP and Smith acknowledge that their appeal will delay the implementation of the Settlement Agreement. (Doc. 282, p. 2). The Trustee has provided specific examples of harm that may result to the estate as a result of the delay. The potential harm recited by the Trustee is realistic, and constitutes a proper basis for requiring a bond. The posting of a bond secures "the costs of delay incident to the appeal." *In re Adelphia Communications*, 361 B.R. at 350(quoting *In re Suprema Specialties, Inc.*, 330 B.R. 93, 96 (S.D.N.Y.2005)).

See also *In re Burkett*, 279 B.R. 816, 817 (Bankr.W.D.Tx.2002)(Offer of bond failed to protect estate from losses resulting from "property's being tied up in litigation during the pendency of an appeal"); and *In re Gleasman*, 111 B.R. 595, 603 (Bankr. W.D.Tx.1990)(Bond was required to protect appellee against any diminution in the value of its collateral pending appeal.).

The Trustee has recited specific instances of potential harm that may be suffered by the estate during the appeal, and CPP and Smith have not shown any "exception-

al circumstances" to justify the waiver of a bond in this case. *In re Adelphia Communications,* 361 B.R. at 350(quoting *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 124 F.R.D. 613, 614 (E.D.Tenn.1988)). Accordingly, the Court determines that CPP and Smith should be required to post a bond as a condition of their stay pending appeal.

**B. The amount of the bond**

The next issue, therefore, involves a determination of the appropriate amount of the bond.

As set forth above, the Order that is the subject of the appeal is not a simple money judgment against CPP and Smith. It is an Order approving a Settlement Agreement between the Trustee and the Debtor.

The Trustee's primary interest in the Settlement Agreement is a Promissory Note in the amount of $2,500,000.00, payable by Wolfs' Lair, Ltd. According to the Settlement Agreement, the Promissory Note will be secured by a mortgage on the Property in North Carolina, and will be due within five years of the approval of the Settlement Agreement.

Consequently, it appears that the bond posted in this case should be calculated to protect the Trustee's interest in the Property, since that is the source of the estate's recovery pursuant to the Settlement Agreement.

In *In re Texas Equipment Company, Inc.,* 283 B.R. at 230, the Bankruptcy Court identified five factors to consider when determining the appropriate amount of a bond in a case involving real property. The factors are: (1) the time value of the property; (2) the diminution in value or destruction of the property, quantified as the cost of insurance on the property; (3) the cost that the appellee will incur for the appeal; (4) the estimated taxes for the property; and (5) any other expenses that the appellee will incur as a result of the delay caused by the appeal. *Id.* (citing *Metz v. United States,* 130 F.R.D. 458, 459–60 (D.Kan.1990); *In re Gleasman,* 111 B.R. at 603–04; and *In re Burkett,* 279 B.R. at 817).

The Court recognizes that the calculation of a bond in a case involving a non-monetary judgment is only an estimate of the potential loss that may result during the pendency of the appeal. In this case, however, the Court looks to the terms of the Settlement Agreement to determine an appropriate measure of the Trustee's interest in the Property during the appeal.

Paragraph 5 of the Settlement Agreement provides in part:

5. Upon the reinstatement of Wolfs' Lair, Ltd., and in connection with the transfers and assignments provided in Paragraphs 3 and 4 above, Wolfs' Lair, Ltd., will deliver to the Trustee a promissory note in the principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000)(the "Trustee's Note") secured by a mortgage against the Property (the "Trustee's Mortgage"), as follows:

(a) Interest on the Trustee's Note will accrue at the rate of ten percent (10%) per annum. All interest will be waived if the promissory note is paid in full on or before the third anniversary of the entry by the Bankruptcy Court of the order approving this Settlement Agreement. Interest on the note from the third anniversary of the entry by the Bankruptcy Court of the order approving this Settlement Agreement will accrue at the rate of fifteen percent (15%) per annum.

(Doc. 215, Exhibit A, Settlement Agreement, ¶ 5).

The best determination of the various damages that may be suffered by the Trustee is the time value of the delay in implementing the settlement. Based on the terms of the Settlement Agreement, that value is the amount of the interest that would accrue in favor of the Trustee on the mortgage that is part of the settlement. Accordingly, the bond should be in the amount of the interest that would accrue on the sum of $2,500,000.00 (the amount secured by the Trustee's Mortgage) at the rate of ten percent (10%) per annum over a period of two years.

### Conclusion

The matter before the Court is a Motion for Stay Pending Appeal filed by CPP and Smith. The Court previously determined that the stay pending appeal should be granted, and the only remaining issue is whether CPP and Smith should be required to post a bond as a condition of the stay.

The Court finds that CPP and Smith should be required to post a bond pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure. CPP and Smith did not satisfy their burden of providing specific reasons why they Court should not require the posting of a bond to protect the Trustee against potential harm that may result to the estate during the appeal.

The amount of the bond to be posted by CPP and Smith is the amount of interest to accrue on the Trustee's Mortgage at the rate of ten percent (10%), in accordance with the Settlement Agreement, over a period of two years. Such amount is an appropriate measure of the Trustee's interest in the Property during the appeal, as determined from the Settlement Agreement.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Stay Pending Appeal filed by Carolina Preservation Partners, Inc. and Douglas A. Smith is granted as set forth in the Order entered on December 26, 2007.

2. The Order entered on December 26, 2007, is modified, however, to provide that the stay pending appeal is conditioned on the posting of a bond by Carolina Preservation Partners, Inc. and Douglas A. Smith in an amount equal to the interest that would accrue on the sum of $2,500,000.00 at the rate of ten percent (10%) per annum over a period of two years.

3. Bond is set in the amount of $500,000 and the appellants are directed to obtain such bond and file a copy of the document issued by a surety company evidencing issuance of the bond with the Clerk of the United States Bankruptcy Court for the Middle District of Florida within twenty (20) days of the date of this order.